1

2

3

4
UNITED STATES DISTRICT COURT

5
FOR THE EASTERN DISTRICT OF CALIFORNIA

6

7
CENTER FOR ENVIRONMENTAL SCIENCE, ACCURACY & RELIABILITY, a California public interest organization,

CASE NO: 1:15-CV-01852-LJO-BAM

8

9
          Plaintiff,

MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS COMPLAINT AS MOOT (Doc. 10) AND DENYING MOTION TO AMEND AS FUTILE (Doc. 18)

10
     v.

11
MARK W. COWIN, in his official capacity as Director of CALIFORNIA DEPARTMENT OF WATER RESOURCES, *et al.*,

12

13
          Defendants.

14

15
## I. CONTINUED ANALYSIS OF MOTION TO DISMISS

16
          The operative Complaint in this case, filed November 19, 2015 by the Center for Environmental

17
Science, Accuracy & Reliability ("CESAR" or "Plaintiff"), seeks declaratory and injunctive relief

18
against construction and operation of an Emergency Drought Salinity Barrier at West False River

19
("Salinity Barrier" or "the Project"[1]) by the California Department of Water Resources ("DWR" or

20
"Defendant"). Doc. 1. The Complaint also seeks to require the U.S. Fish and Wildlife Service ("FWS")

21
to "reinitiate consultation of the 2008 Biological Opinion on the Coordinated Operations of the Central

22
Valley Project [] and State Water Project [] ... due to changed circumstances, to wit, the construction and

23
operation of the Project by [DWR]." *Id*. at ¶ 2. Plaintiff claims that the Salinity Barrier was installed and

24
operated without following procedures necessary to prevent "take" under the Endangered Species Act

25
[1] The parties sometimes refer to the Salinity Barrier as "the Project."

1

1  ("ESA"), 16 U.S.C. §§ 1531 *et seq*, of the ESA-listed delta smelt. *See id*. ¶¶ 46-72. It is undisputed that

2  the Salinity Barrier was installed in May 2015 and completely removed by DWR as of November 15,

3  2015. *Id*. at ¶¶ 12, 14, 34.

4         Before the Court for decision is DWR's motion to dismiss pursuant to Federal Rule of Civil

5  Procedure 12(b)(1) for lack of subject matter jurisdiction. Doc. 12. The Court took the matter under

6  submission on the papers pursuant to Local Rule 230(g). On March 4, 2016, the Court issued a

7  Memorandum Decision and Order denying DWR's motion on certain grounds and requesting

8  supplemental briefing on the issue of mootness. Doc. 22 ("March 4, 2016 Order"). This Memorandum

9  Decision and Order should be read in conjunction with the March 4, 2016 Order, which the Court

10  incorporates by reference.

11         In the March 4, 2016 Order, the Court held the case is technically moot. *Id*. at 10. Plaintiff relies

12  on the exception to mootness for "wrongs capable of repetition yet evading review," by arguing that

13  there is a "reasonable expectation" that the "drought barriers" will be reconstructed. *See* Doc. 12 at 3.

14  This exception "permit[s] suits for prospective relief to go forward despite abatement of the underlying

15  injury [in] exceptional situations where the following two circumstances [are] simultaneously present:

16  (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or

17  expiration, and (2) there [is] a reasonable expectation that the same complaining party would be

18  subjected to the same action again." *Fed. Elec. Com'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449,

19  462 (2007) (internal citations, quotations, and footnote omitted); *see also San Luis & Delta-Mendota*

20  *Water Auth. v. United States*, 672 F.3d 676, 703 (9th Cir. 2012); *San Luis & Delta-Mendota Water Auth.*

21  *v. U.S. Dep't of the Interior*, 870 F. Supp. 2d 943, 959 (E.D. Cal. 2012).

22         The March 4, 2016 Order found that, at least as of that date, the record revealed a "demonstrated

23  probability" that a drought barrier may be needed in 2016. Doc. 22 at 12. The Court then explained:

24                   What is far less clear is how the relevant government agencies will
                     approach their responsibilities under the ESA. Plaintiff's chief complaint
25                   in this case is that the approval process for the installation of the Salinity

1

2

3

4

5

6

7

8

> Barrier in 2015 utilized the ESA's emergency consultation procedures, rather than the standard consultation process. Nothing in the complaint (or any other part of the present record) indicates with clarity how the relevant agencies will approach ESA consultation in 2016. Therefore, it remains unclear whether "there is a reasonable probability that the <u>same controversy</u> will recur involving the same litigants." However, pleading standards do permit the Court to make reasonable inferences from facts alleged in the Complaint. *Iqbal*, 556 U.S. at 663 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). It is now early March 2016. If DWR plans to install a drought barrier as soon as May 2016, it is not unreasonable to infer that emergency consultation is the only form of consultation that can be accomplished within this timeframe. The Court will not reach this conclusion, however, without affording Defendants an opportunity to demonstrate otherwise.

9   *Id*. (emphasis in original). The Court set a briefing schedule for supplemental filings. On March 16,

10   2016, Defendant filed a supplemental brief, Doc. 24, along with the Declaration of John Leahigh

11   ("Leahigh Decl."). Doc. 25. On March 23, 2016, Plaintiff filed a responsive brief, Doc. 26, along with

12   the Declaration of Dr. Rob R. Ramey ("Ramey Decl."), Doc. 28, and numerous supporting documents.

13   Doc. 27. Having reviewed the entire record, the Court concludes that this case is moot and that the

14   "wrongs capable of repetition yet evading review" exception does not apply.

15        As the Court explained in the March 4, 2016 Order, the first factor relevant to that exception –

16   whether the duration of the challenged action is too short to allow for complete litigation – is satisfied

17   here:

18

19

20

21

22

23

> The challenged action lasted from May through November 2015. While it may have been possible to file and resolve a motion for emergency injunctive relief during that timeframe, it is not possible to <u>fully</u> litigate an ESA challenge in such a short period of time. *See Meyer v. Grant*, 486 U.S. 414, 417 (1988) (where state law permitted only six months to obtain necessary signatures to place an initiative on the ballot, challenge to other aspects of the state's initiative procedure could not be litigated fully before time period expired); *see also Alcoa, Inc. v. Bonneville Power Admin*., 698 F.3d 774, 787 (9th Cir. 2012) (suggesting processes lasting from between 12 and 17 months are likely to "evade review" before completion).

Doc. 22 at 11 (footnote omitted).

24        It is the second factor – whether there is a reasonable expectation that the same complaining

25

party would be subjected to the same action – that is dispositive. Plaintiff invokes the standard of

proof applicable where the voluntary conduct of a defendant renders a case moot. The Supreme Court

has recognized that, "as a general rule, voluntary cessation of allegedly illegal conduct does not deprive

the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *Los Angeles*

*Cty. v. Davis*, 440 U.S. 625, 631 (1979) (internal citation and quotation omitted). However, even in the

case of voluntary cessation, dismissal for lack of jurisdiction may be appropriate if (1) there is no

reasonable expectation that the alleged violation will recur, and (2) interim relief or events have

completely and irrevocably eradicated the effects of the alleged violation. *Id*. Yet, here, it was the

<u>planned</u> termination of a <u>temporary</u> project that mooted this case, so the voluntary cessation doctrine

does not apply. *See Colorado Wild, Inc. v. U.S. Forest Serv*., No. 05-cv-01175-JLK-DLW, 2008 WL

4453426, at *5 (D. Colo. Sept. 30, 2008) (voluntary cessation exception to the mootness doctrine does

not apply where temporary permit expired by its own terms).[2] Outside the context of voluntary

cessation, it is <u>Plaintiff's</u> burden to "make a reasonable showing that he will again be subjected to the

alleged illegality." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983); *see also Vegas Diamond*

*Properties, LLC v. F.D.I.C*., 669 F.3d 933, 936 (9th Cir. 2012) (citing *Lyons* for this proposition).[3]

Plaintiff has failed to meet this burden, particularly in light of DWR's submissions to the contrary.[4]

     According to John Leahigh, Chief of the State Water Project ("SWP") Water Operations Office

within DWR, the Salinity Barrier constructed in the summer of 2015 was the first such barrier to be

constructed since the last severe drought in the late 1970s. Leahigh Decl. at ¶ 11. Because of record low

---

[2] As a result of this conclusion, the Court will not consider the evidence submitted by Plaintiff going to the second prong of the voluntary cessation doctrine, namely, whether interim relief or events have completely and irrevocably eradicated the effects of the alleged controversy.

[3] This stands in contrast to the well-established rule that the party asserting mootness bears the "heavy burden" of proving a case is technically moot. *Davis*, 440 U.S. at 631. As discussed in the March 4, 2016 Order, this case is technically moot.

[4] In a "factual" attack on jurisdiction, such as DWR's here, the challenger "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014). In such circumstances, a court may examine extrinsic evidence without converting the motion to one for summary judgment, and there is no presumption of the truthfulness of Plaintiff's allegations. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

1   reservoir storage at the end of 2015, in "an abundance of caution" on October 27, 2015, DWR began the

2   process of applying for the necessary permits to construct the Salinity Barrier again in the spring of

3   2016. *Id*. at ¶¶ 12-13. However, hydrologic conditions changed dramatically in early March 2016. *Id.* at

4   ¶ 18. According to Leahigh "[a]ccumulated monthly precipitation in the northern Sierra through March

5   14 [was] 203% of historical March averages," and "[s]torage gains in SWP and [Central Valley Project]

6   reservoirs have been equally impressive, with gains of over two million acre-feet since March 1." *Id*. In

7   sum, "[a]ll SWP and CVP Sacramento Valley reservoirs are now above historical averages for this time

8   of year." *Id*. As a result, "[i]t is now abundantly clear that storage levels will be adequate this year and

9   that a salinity barrier is no longer needed." *Id*. at ¶ 19. DWR has withdrawn its relevant permit

10  applications to the U.S. Army Corps of Engineers and the State Water Resources Control Board. *Id.* at

11  19 & Ex. A, p. 1. Leahigh states in no uncertain terms that DWR "will not build a salinity barrier in

12  2016." *Id*. at ¶ 19.

13         DWR acknowledges in a letter attached to the Leahigh Declaration that "[a]lthough a salinity

14  barrier is not required for this year, much of California ... remains in an extreme [] or exceptional []

15  drought." *Id*. at Ex. A, p. 2. Therefore, DWR's letter indicates that planning should proceed for the

16  installation of salinity barriers as necessary in the future. *Id*. DWR plans to "continue to discuss with the

17  regulatory agencies the issuance of a programmatic (long term) permit to install a salinity barrier at West

18  False River in 2017 and beyond as part of a more comprehensive multi-year drought contingency

19  planning effort." *Id*. "DWR anticipates invoking the standard [ESA] Section 7 consultation process for

20  the programmatic permit." *Id*. This last fact is critical to evaluating mootness in the context of this case.

21  As mentioned in the March 4, 2016 Order, Plaintiff's chief complaint in this case is that the approval

22  process for the installation of the Salinity Barrier in 2015 utilized the ESA's emergency consultation

23  procedures, rather than the standard ESA Section 7 consultation process. DWR's evidence now

24  demonstrates that emergency consultation procedures will not be utilized in 2016 and that DWR does

25  not intend to use them in 2017 or beyond.

1    Plaintiff acknowledges that DWR has stated its intent to continue to request a programmatic

2  consultation, but emphasizes that DWR provides no information as to the status of that consultation.

3  Doc. 26 at 3-4. Plaintiff argues that DWR's statement that it is "interested in continuing to discuss a

4  programmatic permit" is "entirely without evidentiary value." *Id*. at 4. But, Plaintiff ignores DWR's

5  more direct statement that it "anticipates invoking the standard Section 7 consultation process for the

6  programmatic permit." Leahigh Decl., Ex. A, p. 2. While far from a concrete timeline, this is a statement

7  of intent from an agency of the State of California. The spring of 2017 is still a full year away. Plaintiff

8  has failed to demonstrate that it is implausible that the standard Section 7 consultation process could be

9  initiated and completed within the time remaining.[5] Taking DWR's official at its word, emergency

10  consultation procedures will not be invoked in 2017 or beyond. As DWR is undoubtedly aware, should

11  emergency consultation procedures again be invoked in connection with the installation of a salinity

12  barrier, any subsequent challenge is likely to end up litigated before this Court as a related case and

13  DWR's prior positions will likely become relevant to any future mootness analysis.

14    DWR's motion to dismiss the operative complaint as moot is GRANTED.

15    **II. PENDING MOTION TO AMEND/LEAVE TO AMEND**

16    On March 3, 2016, while the motion to dismiss was pending, Plaintiff filed a motion to amend,

17  attaching a proposed first amended complaint ("FAC") that attempted to clarify some issues relevant to

18  the motion to dismiss. In particular, the FAC described Plaintiff's knowledge and belief as of March 3,

19  2016, that DWR was planning to re-install the drought barrier in 2016. Doc. 18. The March 4, 2016

20

21  [5] The ESA requires formal consultation to be completed within ninety days. 16 U.S.C. § 1536(b). While consulting agencies
   frequently extend this deadline, with some consultations taking several years, *see Karuk Tribe of California v. U.S. Forest
22  Serv*., 681 F.3d 1006, 1039 (9th Cir. 2012) (Smith, J., dissenting), the record reveals nothing that suggests formal
   consultation in this case would require more than a year to complete. The Court notes that in reaching this conclusion it has
23  reviewed the 413 pages of information submitted by Plaintiff in its request for judicial notice, Doc. 27, even though only one
   two-page document (Exhibit B) from that submission is mentioned in Plaintiff's responsive brief. *See* Doc. 26 at 4, n. 5.
   Plaintiff offers Exhibit B as evidence that DWR did not believe the drought barriers were ever an "emergency." While
24  Exhibit B does suggest as much, but only with respect to whether the drought barriers qualify as emergency installations for
   purposes of the California Governor's January 17, 2014 Proclamation of a State of Emergency for purposes of exempting the
25  project from California's Environmental Quality Act compliance. As such, the Court finds this document inapposite to the
   matter at hand.

Order determined that it would be appropriate to hold the motion to amend in abeyance while the motion to dismiss was pending. Now that the motion to dismiss has been resolved, the Court also concludes that permitting the filing of the FAC would be futile, as the facts alleged therein are outdated. Moreover, the Court cannot fathom how the complaint could be amended to cure its deficiencies. *See Ctr. for Biological Diversity v. Veneman*, 394 F.3d 1108, 1114 (9th Cir. 2005) (upon dismissal for lack of subject matter jurisdiction, court should grant leave to amend unless it is clear beyond a doubt that amendment would be futile).

### III. CONCLUSION

For the reasons set forth above:

(1) DWR's motion to dismiss the operative complaint as moot is GRANTED;

(2) Plaintiff's motion to amend is DENIED as FUTILE; and

(3) the Clerk of Court is directed to CLOSE THIS CASE.

IT IS SO ORDERED.

Dated:    **March 31, 2016**                              **/s/ Lawrence J. O'Neill**
                                                         UNITED STATES DISTRICT JUDGE